2022 IL App (1st) 220713-U
No. 1-22-0713
Order filed December 27, 2022

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ALICE LEE, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | No. 21 M3 005866 |
| v. | ) | |
| | ) | |
| CHARLES TALLEY and ALL UNKNOWN | ) | Honorable |
| OCCUPANTS, | ) | Martin S. Agran, |
| | ) | Judge, presiding. |
| Defendants-Appellants. | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirming trial court's judgment for plaintiff in forcible entry and detainer case.

¶ 2    Charles Talley leased a house in Hoffman Estates from plaintiff Alice Lee. Talley received a monthly voucher from the Housing Authority of Cook County to help pay rent. But, the Housing Authority terminated Talley's aid after the house failed a mandatory annual inspection. Without financial assistance, Talley fell behind on the rent, and Lee filed an

eviction complaint seeking possession and past-due rent. Talley asserts he stopped paying rent because the house was not habitable due to a leaky and moldy basement, defective electrical equipment, and a non-functioning refrigerator.

¶ 3    After a bench trial, the trial court ruled in Lee's favor, finding the evidence showed Lee hired workers to make repairs, but Talley refused to allow them in the house, and thus, he had no excuse for refusing to pay the rent. The court ordered Talley to vacate the house and pay $15,974 for past-due rent and court costs.

¶ 4    Representing himself, Talley appeals arguing the trial court should have dismissed the case because (i) it lacked jurisdiction after he filed a housing discrimination suit against Lee pending in federal court and (ii) the house was not habitable. Lee also argues the trial court made two evidentiary errors (i) allowing Lee to present hearsay testimony, over his objection, that workers told her Talley would not allow them inside the home to do repairs and (ii) allowing evidence that he had withdrawn his application for the Housing Authority's Covid-19 Recovery Emergency Rental Assistance Program, for which Talley claims he did not qualify.

¶ 5    We affirm. In the absence of a motion to remove the case to federal court, the trial court had jurisdiction, and Talley's breach of warranty of habitability claim presented an issue of fact and was not grounds for dismissal. Further, the trial court did not abuse its discretion in ruling on Talley's hearsay objections or allowing evidence that Talley withdrew his application for Covid-19 Recovery assistance.

¶ 6                                   Background

¶ 7    Talley and his son moved into the house in September 2003. Talley's lease required him to pay $1,550 monthly rent. Talley was responsible for $715 and received a housing voucher

from the Housing Authority for the balance. Continued participation in the voucher program was contingent on the house passing an annual inspection.

¶ 8        On May 4, 2021, Talley sent a letter to Lee identifying several problems, including a leaking roof and foundation, which caused the heating vents and basement to flood, non-functioning electrical outlets and lights, and a broken refrigerator. Talley said he would be moving out and placing rent in escrow until Lee made repairs. Later that month, Lee had the roof replaced, and the refrigerator inspected. According to Lee, the refrigerator was not broken but inoperable because the electrical system in the house needed updating.

¶ 9        On May 24, 2021, the Village of Hoffman Estates inspected the property and issued a report listing 11 repairs Lee needed to make by June 24, when there would be a reinspection. Repairs included fixing the foundation, which was leaking and flooding, mending a water leak in the basement bathroom, replacing damaged drywall and wood, rectifying electrical problems, fixing a room installed without a permit, and attaching downspouts and gutters.

¶ 10        Lee claimed she hired workers to make the repairs and emailed Talley multiple times, but he would not allow the workers in the house. Also, she emailed Sandra Love at the Housing Authority asking for an extension for the reinspection because "Charles is not cooperating with the repair." The next day, Lee emailed Darche Turner at the Housing Authority, asking again for an extension because Talley insisted the workers get a permit for the electrical work, even though a permit was not required. Lee also requested Turner advise Talley to cooperate with the reinspection. Turner told Lee the reinspection could not be postponed. Lee emailed Talley and told him that if he continued to deny access, his housing benefits would be terminated.

¶ 11        The reinspection went ahead as scheduled, and the house again failed because repairs had not been made. As a result, the Housing Authority informed Talley it was terminating his rental

assistance, making him responsible for the full $1,550 monthly rent. Talley later applied for the Housing Authority's Covid-19 Recovery Emergency Rental Assistance. The record shows the Housing Authority notified him by email that his application was incomplete because he failed to explain why he needed the assistance and later his application was denied because he had withdrawn it.

¶ 12    Talley stopped paying rent, and Lee served him with a Five Day Notice to terminate his lease. She then filed a complaint for possession of the property, money damages for past rent, and costs. The same day, Talley filed a complaint in federal district court against Lee, alleging housing discrimination. He then moved to dismiss Lee's complaint, arguing the trial court lacked jurisdiction because of his pending federal case. Talley later filed a second motion to dismiss Lee's complaint on the grounds that she had breached the implied warranted of habitability. The record indicates the trial court scheduled a Zoom hearing on the motion to dismiss in February 2021. The parties agree the trial court denied the motion, but neither a hearing transcript nor an order is in the record.

¶ 13                              Trial Court Proceedings

¶ 14    Talley represented himself at the April 2022 bench trial. Lee testified she had the roof replaced in May 2021 and, after the house failed inspection in June 2021, she hired contractors to make repairs. The trial court sustained Talley's hearsay objections when Lee's attorney asked her if the workers told her Talley would not let them in the house. Over Talley's hearsay objection, the court allowed Lee to testify that she asked Darche Turner at the Housing Authority to advise Talley to cooperate with the repairs but sustained Talley's objection when Lee's attorney asked if Turner had advised Talley to cooperate. Lee testified that Talley had not paid rent since April 2021, had not placed the rent in escrow, and continues to reside in the

home. Lee also testified that the Housing Authority granted Talley emergency Covid rental assistance, but he did not accept it.

¶ 15     Talley testified he did not prevent workers from entering the home but asserted his driveway was inaccessible because the Village shut down the street for repairs. He also testified he did not qualify for the Housing Authority's Covid-19 housing assistance and did not recall withdrawing his application. On cross-examination, Talley acknowledged that before 2021, Lee had always made necessary repairs to ensure the home passed inspection.

¶ 16     After the bench trial, the court entered judgment for Lee, ordering Talley to move out by May 18, 2022, and to pay $15,974 in past due rent and court costs. In ruling for Lee, the trial judge said to Talley,

> "there is no testimony here on your behalf that you allowed people to come in to make these repairs but they didn't want to come. *** The testimony by Ms. Lee is that your workmen were turned away by you—from your premises on a number of occasions that she could not get in there to make the repairs. *** Had you allowed them to be in there, you wouldn't have lost your rent abatement. *** In addition to that, there is evidence that was presented that you withdrew your application for rental assistance. *** The evidence, certainly by a preponderance, *** shows that Ms. Lee tried to get those repairs done. As a result of that the inspection failed. In addition[,]*** you gave notice were going to vacate the property. You did not vacate the property. *** So, for all of those reasons, there will be a judgment for the plaintiff and an order of possession."

¶ 17                                   Analysis

¶ 18                              Motions to Dismiss

¶ 19       Talley contends the trial court should have granted his motions to dismiss because (i) the court lacked jurisdiction due to the pending federal case, and (ii) the property was not in a habitable state.

¶ 20       A section 2-619(a) motion admits the legal sufficiency of a complaint but asserts affirmative matter outside the pleadings that defeats a cause of action. *Doe v. Gleicher*, 393 Ill. App.3 d 31, 34 (2009). The court takes as true all well-pleaded facts and associated inferences and considers whether a genuine issue of fact precludes dismissal or whether a claim may be dismissed as a matter of law. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 436 (2008). We review trial court orders on motions to dismiss under a *de novo* standard of review. *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill. App. 3d 77, 85 (2007).

¶ 21       An order in the record indicates the trial court scheduled a Zoom hearing on Talley's motions to dismiss for January 27, 2022, but, as noted, neither a transcript from that proceeding nor an order denying the motions was included in the record. An appellant has the burden to present a sufficiently complete record to support his or her claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of a complete record, we must presume the trial court's order conformed with the law and had a sufficient factual basis. *Id*. at 392. "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id*. Talley has failed to provide a complete record by including a transcript from the hearing or a copy of the order denying the motion to dismiss. Thus, we must presume that the trial court's order conformed with the law and had a sufficient factual basis.

¶ 22       Even so, Talley's arguments lack merit. Lee's complaint alleged a justiciable matter under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq*. (West 2020)), which gave the trial court subject matter jurisdiction. See *Megan G.*, 2015 IL App (2d) 140148, ¶¶ 22. ("Under

section 9 of article VI of the Illinois Constitution, the jurisdiction of circuit courts extends to all 'justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office.' Ill. Const. 1970, art. VI, § 9."). Talley's federal district court case alleging violations of federal civil rights laws did not deprive the circuit court of jurisdiction over the eviction case, particularly in the absence of a motion by Talley to remove the case to federal court. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 154 (holding that when a petition for removal has been filed in Federal district court and other requirements of section 1446(e) of the Federal Judicial Procedures code (28 U.S.C. § 1446(e) (1988)) have been met, the State court loses jurisdiction to proceed further until the case is remanded).

¶ 23    Further, in a forcible entry and detainer action, a tenant's allegation that the landlord breached the implied warranty of habitability is an affirmative defense. *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 610 (2007). It presents a question of fact for the trial court to decide on a case-by-case basis. *Vanlandingham v. Ivanow*, 246 Ill. App. 3d 348, 359 (1993). Talley's allegations that Lee breached the implied warranty of habitability presented a genuine question of fact for the trial court, which precluded dismissal under section 2-619(a) of the Code. 735 ILCS 5/2-619(a) (West 2020). Thus, the trial court did not err in denying Talley's motions to dismiss.

¶ 24                                         Hearsay

¶ 25    Talley contends the trial court abused its discretion by admitting (i) Lee's hearsay testimony that the workers she hired told her Talley would not allow them into his home to make repairs and (ii) evidence that he withdrew his application for Covid-19 rental relief, which conflicted with his testimony that he did not qualify for relief.

¶ 26        Evidentiary rulings are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *People v. Caffey*, 205 Ill. 2d 52, 89 (2001). "An abuse of discretion occurs only where the trial court's decision is 'arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it.' " *People v. Lerma*, 2016 IL 118496, ¶ 23 (quoting *People v. Rivera*, 2013 IL 112467, ¶ 37). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible. *In re Marriage of Hodges,* 2018 IL App (5th) 170164, ¶ 23. The trial court has discretion to determine whether a statement is being offered for the truth of the matter asserted or for a non-hearsay purpose. *Caffey*, 205 Ill. 2d at 89-90.

¶ 27        During direction examination of Lee, Talley made three hearsay objections to questions about whether the repairmen told Lee that Talley would not allow them in the house. The trial court sustained all three objections. The trial court overruled a fourth hearsay objection when Lee's attorney asked if she sent an email to Turner at the Housing Authority asking her to advise Talley to cooperate with the repairs. The court sustained Talley's objection to a follow up question asking if Turner indeed told Talley to cooperate.

¶ 28        Plainly, Talley cannot argue the trial court abused its discretion by sustaining three of his hearsay objections. As to the Talley's fourth objection, that testimony did not involve statements from workers that Talley would not allow them in the home but rather, showed that Lee emailed the Housing Authority seeking assistance in making the repairs before the re-inspection. Given that the testimony could be offered for a non-hearsay purpose, overruling Talley's objection did not constitute an abuse of discretion. *Caffey*, 205 Ill. 2d at 89-90.

¶ 29                       Evidence Regarding Covid-19 Assistance

¶ 30    Talley contends the trial court erred in allowing evidence about his application for the Housing Authority's Covid-19 Rental Assistance Program to suggest he "should" have accepted the aid.

¶ 31    At trial, Lee testified that the Housing Authority granted Talley assistance, but he did not accept it, while Talley asserted he did not qualify for the aid. It appears the trial court did not believe either party. Contrary to Talley's contention, the trial court did not hold that he "should" have accepted the aid, but rather, made a factual finding that he had withdrawn his application.

¶ 32    We give great deference to the circuit court's credibility determinations and will not substitute our judgment for that of the circuit court, which is in the best position to evaluate the conduct and demeanor of the witnesses. *ICD Publications, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, ¶ 52. We will not disturb the findings and judgment of the trier of fact if there is evidence in the record to support the findings. *Id*.

¶ 33    Relying on emails, the trial court found that the Housing Authority denied Talley's application for Covid-19 assistance because he withdrew it after being asked to provide additional information. That finding was not against the manifest weight of the evidence and the trial court did not abuse its discretion in allowing into evidence testimony and documents regarding Talley's application. *Caffey*, 205 Ill. 2d at 89. Even so, any error was harmless, as the trial court's judgment in Lee's favor turned on Talley's refusal to allow workers in the home, not on whether he withdrew his application for Covid-19 assistance. *Holston v. Sisters of The Third Order of St. Francis*, 247 Ill. App. 3d 985, 999 (1993) (an erroneous ruling on the admissibility of evidence is harmless where the result reached is not affected by the ruling).

¶ 34    Affirmed.